---



SO ORDERED,

*Edward Ellington*

**Judge Edward Ellington**
**United States Bankruptcy Judge**
**Date Signed: April 24, 2014**

The Order of the Court is set forth below. The docket reflects the date entered.

---

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | **CHAPTER 7** |
| **KENNETH LEE SIMMONS** | **CASE NO. 1200937EE** |
| **MARY ALLISON SIMMONS** | |

**DEREK A. HENDERSON, TRUSTEE FOR**
**KENNETH LEE SIMMONS AND**
**MARY ALLISON SIMMONS, AND**
**TRUSTMARK NATIONAL BANK**

**V.**                                                     **ADVERSARY NO. 1200061EE**

**BANK OF AMERICA, N.A.**

Hon. Eileen N. Shaffer                                    Attorney for Debtors
P. O. Box 1177
Jackson, MS 39215-1177
enslaw@bellsouth.net

Hon. Derek A. Henderson                                   Chapter 7 Trustee
1765-A Lelia Dr.
Suite 103
Jackson, MS 39216
derek@derekhendersonlaw.com

Hon. Patrick F. McAllister                    Attorney for Trustmark National Bank
303 Highland Park Cove
Suite A
Ridgeland, MS  39157-6059
pmcallister@wmjlaw.com

Hon. Laura Henderson-Courtney                 Attorneys for Bank of America
340 Edgewood Terrace Dr.
Jackson, MS  39206
lhc@underwoodlawfirm.com

Hon. Donald A. Windham
P. O. Box 22587
Jackson, MS  39225-2587
awindham@balch.com

Edward Ellington, Judge

<u>**MEMORANDUM OPINION**</u>

**THIS MATTER** came before the Court on the following pleadings:

1.  *Bank of America, N.A's Motion to Abstain* (Adv. Dkt. #22);

2.  *Trustmark National Bank's Objection to Bank of America, N.A.'s Motion to Abstain* (Adv. Dkt. #26);

3.  *Plaintiffs' Objection to Bank of America, N.A.'s Motion to Abstain* (Adv. Dkt. #27) filed by the Kenneth Lee Simmons and Mary Allison Simmons;

4.  *Bank of America, N.A.'s Reply in Support of its Motion to Abstain* (Adv. Dkt. #29);

5.  *Bank of America, N.A.'s Motion for Summary Judgment* (Adv. Dkt. #45) and *Bank of America's Itemization of Undisputed Facts in Support of its Motion for Summary Judgment* (Adv. Dkt. #56);

6.  *Response of Trustmark National Bank to Bank of America, N.A.'s Motion for Summary Judgment* (Adv. Dkt. #48);

7. *Bank of America, N.A.'s Reply in Support of its Motion for Summary Judgment* (Adv. Dkt. #52);

8. *Motion of Trustmark National Bank for Summary Judgment* (Adv. Dkt. #49);

9. *Bank of America, N.A.'s Response to Trustmark National Bank's Motion for Summary* (Adv. Dkt. #54); and

10. *Trustmark National Bank's Reply Memorandum Brief in Support of its Motion for Summary Judgment* (Adv. Dkt. #55).

After considering the pleadings and the briefs, the Court finds that *Bank of America, N.A's Motion to Abstain* (Adv. Dkt. #22) is not well taken and should be denied. The Court further finds that *Bank of America, N.A.'s Motion for Summary Judgment* (Adv. Dkt. #45) should be denied and that *Motion of Trustmark National Bank for Summary Judgment* (Adv. Dkt. #49) should be granted.

## FINDINGS OF FACT

The Court agrees with the parties that the facts are not in dispute.[1]  Consequently, the undisputed facts are as follows:

On October 29, 1992, the property located at 3426 Old Canton Road, Jackson, Mississippi, 39216, (Property) was conveyed by *Warranty Deed* (1992 Deed) from James L. Brown and Mary Grace Brown to Mary Allison Brown Simmons, one of the debtors in this case. The 1992 Deed was recorded at Book 4046, Page 205 in the land records of Hinds County, Jackson, Mississippi. The legal description contained in the 1992 Deed is as follows:

---

[1]"Trustmark agrees with BOA that there are no disputed issues of material fact which would preclude entry of summary judgment and that the lien priority issue presented by the motions for summary judgment is a question of law to be resolved by the Court without the submission of additional evidence." *Trustmark National Bank's Memorandum Brief in Opposition to Bank of America, N.A.'s Motion for Summary Judgment and in Support of its Motion for Summary Judgment*, Adv. Proc. No. 1200061EE, Adv. Dkt. #50, p. 4, July 15, 2013.

That part of Lot Fifteen (15), of Block "A", of Woodland Hills, a subdivision to the City of Jackson, First Judicial District of Hinds County, Mississippi, according to the map or plat thereof of record in the office of the Chancery Clerk of Hinds county at Jackson, Mississippi, in Plat Book No. 4 at Page 40 thereof, which is more particularly described by metes and bounds as follows:

Beginning at a point on the southeastern line of Canton Avenue a distance of 58.2 feet measured southwesterly along the southeastern line of Canton Avenue from its intersection with the line of Canton Avenue from its intersection with the line between Lots 14 and 15 of said Block "A" of Woodland Hills, run thence southwesterly along the southeastern line of Canton Avenue (being the northwestern line of said Lot 15) for a distance of 80 feet; thence turning to the left through an angle of 94 degrees 28 minutes run southeasterly for a distance of 203.5 feet to a point on the southeastern line of said Lot 15, which point is 24 feet northeasterly from the southern corner of said Lot 15; thence turning to the left through an angle of 100 degrees 22 minutes run northeasterly along the southeastern line of said Lot 15, for a distance of 80 feet; thence northwesterly a distance of 182.8 feet to the point of beginning.[2]

On October 1, 2003, Kenneth L. Simmons and Mary Allison Brown Simmons (Debtors) executed a *Deed of Trust* (2003 Deed of Trust) in favor of Full Spectrum Lending, Inc.  The 2003 Deed of Trust was recorded at Book 5910, Page 409 in the land records of Hinds County, Jackson, Mississippi, on October 15, 2003.

Attached to the 2003 Deed of Trust is *Exhibit "A" Legal Description* (Legal Description).

The Legal Description states as follows:

All that certain parcel of land situated in the Township of Dingman, County of Pike, and Commonwealth of Pennsylvania, more particularly described as follows:

Lot 29, on a Subdivision Plan entitled "Blue Stone Ridge Sub-Division" dated October 17, 1990, surveyed and drawn by Pasquale R. Addio, Registered Surveyor,

---

[2]*Motion of Trustmark National Bank for Summary Judgment,* Adv. Proc. No. 1200061EE, Adv. Dkt. #49, Exhibit [A]*, *Warranty Deed*, July 15, 2013.

*In the body of the motion, the Warranty Deed is cited as "Ex. A."  However, when you look at the first exhibit, which is the Warranty Deed, there is a sticker with the letter "C" written on it.  The exhibit is not marked as "Ex. A."

Milford, Pennsylvania, Drawing No. F-300-88-90, and recorded in the Office of the Recorder of Deeds, Pike County, Pennsylvania on January 3, 1991, in Plat Book 28, at page 164, reference being had thereto for a more complete description of the premises conveyed herein.

Tax ID: 03-0-110791[3]

Clearly, this Legal Description is not the correct legal description for the Property which is located in Hinds County, Mississippi.

The Debtors executed a subsequent *Deed of Trust* (Trustmark Deed of Trust) to Trustmark National Bank (Trustmark) on December 15, 2006. The Trustmark Deed of Trust was recorded at Book 6632, Page 377 in the land records of Hinds County, Jackson, Mississippi, on January 24, 2007. Attached to the Trustmark Deed of Trust as *Exhibit "A"* is a legal description:

That part of Lot Fifteen (15), of Block "A", of Woodland Hills, a subdivision to the City of Jackson, First Judicial District of Hinds County, Mississippi, according to the map or plat thereof of record in the office of the Chancery Clerk of Hinds County at Jackson, Mississippi, in Plat Book No. 4 at Page 40 thereof, which is more particularly described by metes and bounds as follows:

Beginning at a point on the southeastern line of Canton Avenue a distance of 58.2 feet measured southwesterly along the southeastern line of Canton Avenue from its intersection with the line between Lots 14 and 15 of said Block "A" of Woodland Hills, run thence southwesterly along the southeastern line of Canton Avenue (being the northwestern line of said Lot 15) for a distance of 80 feet; thence turning to the left through an angle of 94° 28' run southeasterly for a distance of 203.5 feet to a point on the southeastern line of said Lot 15, which point is 24 feet northeasterly from the southern corner of said Lot 15; thence turning to the left through an angle of 100° 22' run northeasterly along the southeasterly along the southeastern line of said Lot 15 for a distance of 80 feet; thence northwesterly a distance of 182.8 feet to the point of beginning.[4]

---

[3]*Bank of America's Itemization of Undisputed Facts in Support of its Motion for Summary Judgment,* Adv. Proc. No. 1200061EE, Adv. Dkt. #56, Exhibit A, *Deed of Trust*, August 13, 2013.

[4]*Motion of Trustmark National Bank for Summary Judgment,* Adv. Proc. No. 1200061EE, Adv. Dkt. #49, Unmarked Exhibit B, *Deed of Trust*, July 15, 2013.

This legal description is substantially the same[5] legal description contained in the 1992 Deed and is the correct legal description for the Property.

On September 19, 2011, Mortgage Electronic Registration Systems, Inc. as nominee for Full Spectrum Lending, Inc. entered into a *Corporation Assignment of Deed of Trust/Mortgage* (Assignment) in which it assigned the 2003 Deed of Trust to "The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of CWABS 2004-02."[6]   The Assignment states that it assigns

> [A]LL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 10/01/2003, EXECUTED BY:  KENNETH L. SIMMONS AND MARY ALLISON BROWN SIMMONS, TRUSTOR:   TO CTC REAL ESTATE SERVICES, AS TRUSTEE FILED ON 10/15/2003 AND RECORDED, IN BOOK 5910, PAGE 409 OF OFFICIAL RECORDS IN THE COUNTY RECORDERS OFFICE OF HINDS COUNTY, IN THE STATE OF MISSISSIPPI, DESCRIBING THE LAND THEREIN AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST.[7]

Even though the Assignment refers to the Legal Description contained in the 2003 Deed of Trust the legal description attached to the Assignment as *Exhibit A* is not the legal description of property located in the Commonwealth of Pennsylvania.  Instead, *Exhibit A* is the legal description of the Property as contained in the 1992 Deed and the Trustmark Deed of Trust.  The Assignment was recorded at Book 7124, Page 8114 in the land records of Hinds County, Jackson, Mississippi, on October 19, 2011.

---

[5]When comparing the two legal descriptions, there are some minor changes in the wording, however these changes are not material.

[6]*Bank of America's Itemization of Undisputed Facts in Support of its Motion for Summary Judgment,* Adv. Proc. No. 1200061EE, Adv. Dkt. #56, Exhibit B, *Corporation Assignment of Deed of Trust/Mortgage*, August 13, 2013.

[7]*Id.*

It appears that sometime after the Assignment was recorded, the error in the Legal Description contained in the 2003 Deed of Trust was discovered.  On February 15, 2012, the Bank of New York Mellon F/K/A the Bank of New York as Trustee for the Benefit of the Certificateholders of the CWABS Inc., Asset-Backed Certificates, Series 2004-2 (BNYM) filed a *Complaint to Reform a Deed of Trust* (State Complaint) in the Chancery Court of the First Judicial District of Hinds County, Jackson, Mississippi.  The Debtors were the only named defendants.

In the State Complaint, BNYM acknowledges that due to "scrivener's error"[8] the Legal Description attached to the 2003 Deed of Trust is incorrect and that the legal description in the 1992 Deed is correct.  BNYM requests that the 2003 Deed of Trust be reformed to contain the same legal description as that contained in the 1992 Deed.

On February 15, 2012, BNYM filed a *Lis Pendens Notice* (Lis Pendens) in the office of the Chancery Clerk of the First Judicial District of Hinds County, Jackson, Mississippi.  The Lis Pendens states that BNYM was "seeking to enforce a lien"[9] on the Debtors' property.  The Lis Pendens contains the correct legal description for the Property.

On March 15, 2012, the Debtors filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.  Derek A. Henderson (Trustee) was appointed the Chapter 7 Trustee for the Debtors' bankruptcy case.

On June 6, 2012, the Debtors filed their *Complaint to Determine Extent and Validity of Liens*

---

[8]*Bank of America, N.A.'s Motion to Abstain*, Adv. Proc. No. 1200061EE, Adv. Dkt. #22, Exhibit C, *Complaint to Reform a Deed of Trust*, p. 3, November 9, 2012.

[9]*Bank of America, N.A.'s Motion for Summary Judgment*, Adv. Proc. No. 1200061EE, Adv. Dkt. #45, Exhibit C, *Lis Pendens Notice*, p. 1, June 24, 2013.

(Adv. Dkt. #1) (Complaint) in this Court against Bank of America, N.A. (BOA).[10]    In their Complaint, the Debtors allege that because the Legal Description contained in the 2003 Deed of Trust is incorrect, BOA does not have a perfected security interest in the Property, and the 2003 Deed of Trust is avoidable pursuant to 11 U.S.C. §§ 544 and 545.[11]

On August 13, 2012, *Bank of America, N.A.'s Answer to Plaintiffs' Complaint to Determine Extent and Validity of Liens* (Adv. Dkt. #8) (Answer) was filed.  In its Answer, BOA alleges that at the time the bankruptcy was filed, BOA had filed suit to correct the Legal Description in the 2003 Deed of Trust and had filed a Lis Pendens; therefore, BOA asserts that the Trustee cannot be a bona fide purchaser of the Property.

Trustmark filed its *Motion to Intervene* (Adv. Dkt. #11), and the Court granted Trustmark permission to intervene in the adversary proceeding.  Thereafter, on September 5, 2012, the *Answer of Trustmark National Bank* (Adv. Dkt. #15) was filed.  Trustmark alleges that BOA's 2003 Deed of Trust is unperfected, and therefore, the Trustmark Deed of Trust is the first lienholder on the Property.

On October 16, 2012, the Debtors filed a *Motion for Leave to Amend Complaint to Determine Extent and Validity of Liens* (Adv. Dkt. #18) (Motion to Amend).  In their Motion to Amend, the Debtors seek permission to amend their Complaint to add the Trustee and Trustmark

---

[10]Pursuant to the Assignment, BNYM is the lienholder.  However, the adversary proceeding was filed against BOA, and BOA has been the only party responding on behalf of the purported lienholder.  The only information the Court has regarding BOA's connection is contained in *Bank of America, N.A.'s Motion to Abstain* (Adv. Dkt. #22).  Paragraph 3 states that BOA is the current servicer of the note and 2003 Deed of Trust.

[11]Hereinafter, all code sections refer to the Bankruptcy Code found at Title 11 of the United States Code unless specifically noted otherwise.

as necessary parties and to add an additional ground for relief.  Attached to their Motion to Amend as Exhibit A is the *Amended Complaint to Determine Extent and Validity of Liens or in the alternative, to Set Aside a Preference* (Amended Complaint).  The Court entered an order on March 12, 2013, and again on April 2, 2013, granting the Motion to Amend.  On August 2, 2013, the Amended Complaint was filed by the Trustee and Trustmark.[12]

In the Amended Complaint, the Trustee and Trustmark allege BOA does not have a perfected lien in the Property and that the 2003 Deed of Trust may be avoided pursuant to § 544 and § 545. Further, the Trustee and Trustmark allege that BOA's attempt to perfect its security interest in the Property by filing the Lis Pendens constituted an avoidable preference pursuant to § 547(b).

On November 9, 2012, BOA filed *Bank of America, N.A.'s Motion to Abstain* (Adv. Dkt. #22) (Motion to Abstain).  BOA alleges that mandatory abstention applies pursuant to 28 U.S.C. § 1334(c)(2), or in the alternative, discretionary abstention applies pursuant to 28 U.S.C. § 1334(c)(1).  The Trustee, Trustmark, and the Debtors all filed responses to the Motion to Abstain alleging that abstention did not apply to the facts before the Court.

*Bank of America, N.A.'s Motion for Summary Judgment* (Adv. Dkt. #45) (BOA Summary Judgment) was filed on June 24, 2013.  On July 15, 2013, the *Motion of Trustmark National Bank for Summary Judgment* (Adv. Dkt. #49) (Trustmark Summary Judgment) was filed.  After all responses and briefs were filed, the Court took the Motion to Abstain, BOA Summary Judgment and Trustmark Summary Judgment under advisement.

---

[12]For more background on the Amended Complaint, see the *Order on Bank of America, N.A.'s Motion to Dismiss Amended Complaint* entered contemporaneously with this Opinion.

## CONCLUSIONS OF LAW

### I. Jurisdiction

### A. Bankruptcy Code

This Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(1) and (2)(K).

### B. Effect of *Stern v. Marshall*

While BOA has not raised a *Stern* challenge to this Court's constitutional authority to enter a final judgment in the above-styled adversary proceeding, the Court will address the effect, if any, of *Stern.*

In the very recent case of *The Cadle Co. v. Moore (In re Moore),* 739 F.3d 724 (5th Cir. 2014),[13] the Court of Appeals for the Fifth Circuit addressed the effect of the U. S. Supreme Court's holding in *Stern v. Marshall,* — U.S. —, 131 S.Ct 2594, 180 L.Ed. 2d 475 (2011).

In *Moore*, the Cadle Company (Cadle) filed suit in state court against the Moores and two related entities in an attempt to enforce a judgment it had previously obtained against Mr. Moore. Cadle alleged that Mr. Moore used his wife and the two entities to shield his personal assets from Cadle and other creditors. Cadle asserted claims of fraudulent conveyance, reverse veil piercing and constructive trust. The Moores filed bankruptcy, and Cadle removed the state court action to the

---

[13]The *Moore* case has spawned at least two separate opinions by the Fifth Circuit. The first opinion involved the selling of an avoidance action by the trustee. *See The Cadle Co. v. Mims,* 608 F.3d 253 (5th Cir. 2010). The most recent opinion involved the question of whether the bankruptcy court properly dismissed the adversary proceeding based on an abuse of judicial process. The Fifth Circuit stated in the 2014 *Moore* opinion that "[u]nless otherwise noted, all proceedings discussed below occurred in the avoidance action." *In re Moore,* 739 F.3d at 727 n.2.

bankruptcy court.  Cadle filed a proof of claim in the bankruptcy case.  The bankruptcy trustee was

substituted in as plaintiff in the adversary proceeding.  The lawsuit was then settled, and Cadle

objected to the settlement and sought to buy the claim from the trustee.  On appeal, Cadle raised the

issue of the bankruptcy court's authority to enter a final judgment on the lawsuit.

In addressing Cadle's claim that the bankruptcy court lacked authority under *Stern*, the Fifth

Circuit stated:

> Article III of the Constitution places certain constraints on the statutory powers of
> bankruptcy courts. The Supreme Court recently clarified these Article III constraints
> in *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). The
> Court held that notwithstanding the bankruptcy court's statutory authority under
> § 157(b)(2)(C) to adjudicate an estate's counterclaim against a creditor, the
> bankruptcy court had no constitutional authority to enter final judgment on a state-
> law counterclaim because it would "not [be] resolved in the process of ruling on a
> creditor's proof of claim." *Id.* at 2620; *see also In re Frazin,* 732 F.3d at 317–320.

> Cadle contends that under *Stern,* the bankruptcy court lacked constitutional authority
> to enter final judgment because the avoidance action originated from and is based
> entirely upon state law and is thus wholly independent of the bankruptcy proceeding.
> We disagree. The bankruptcy court had authority to enter final judgment because
> Cadle's state-law claims "would necessarily be resolved in the claims allowance
> process." *Id.* at 2618. In *Stern,* the trustee asserted counterclaims to augment the
> estate apart from the bankruptcy proceeding. Here, Cadle is a creditor who has filed
> a proof of claim for debts owed by the debtor, and resolving the state-law claims is
> necessary to adjudicating its proof of claim. Such claims by creditors against debtors
> are the very reason the claims allowance process exists. *Cf. In re Frazin,* 732 F.3d
> at 320–24 (concluding that two of three counterclaims would necessarily be resolved
> in bankruptcy court's award of attorney's fees and were therefore within court's
> constitutional authority under *Stern*).

> Contrary to Cadle's submission, the state-law basis of the claims is not dispositive.
> Here, while Cadle's claims rest on state-law theories and were originally brought in
> state court, after Moore's filing for bankruptcy, the Bankruptcy Code governed the
> avoidance action. *See, e.g.,* 11 U.S.C. §§ 544 (strong-arm powers), 548 (fraudulent
> transfers by debtor). Accordingly, the bankruptcy court had constitutional authority
> to enter final judgment in this adversary proceeding.

*In re Moore*, 739 F.3d at 728.

Likewise in the case at bar, BOA has filed a proof of claim in the Debtors' bankruptcy case

alleging it holds a secured claim in the amount of $745,414.79.[14]  And while BOA's state law claim

for reformation of the 2003 Deed of Trust was filed in state court, BOA's claims will "be resolved

in the claims allowance process."[15]  Like Cadle's situation, even though BOA's claim is based on

state law, once the Debtors filed bankruptcy, the Bankruptcy Code governs the avoidance action

under § 544 (strong-arm powers of trustee), § 545 (lien avoidance) or § 547 (avoidance of a

preference).  Accordingly, the Court has the constitutional authority to enter a final judgment.

## II.  Motion to Abstain

As noted above, BOA filed its Motion to Abstain in which it alleges that mandatory

abstention applies pursuant to 28 U.S.C. § 1334(c)(2), or in the alternative, discretionary abstention

applies pursuant to 28 U.S.C. § 1334(c)(1).[16]

Section § 1334(c) provides:

§ 1334. Bankruptcy cases and proceedings.

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this
section prevents a district court in the interest of justice, or in the interest of comity
with State courts or respect for State law, from abstaining from hearing a particular
proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or
State law cause of action, related to a case under title 11 but not arising under title
11 or arising in a case under title 11, with respect to which an action could not have
been commenced in a court of the United States absent jurisdiction under this
section, the district court shall abstain from hearing such proceeding if an action is
commenced, and can be timely adjudicated, in a State forum of appropriate

---

[14]*Amended Proof of Claim*, Claim # 21-2, Case No. 1200937EE, February 20, 2013.

[15]*Stern,* 131 S.Ct. at 2618.

[16]For purposes of subsection II only, all code sections refer to Title 28 of the United States Code
unless noted otherwise.

jurisdiction.

28 U.S.C. § 1334(c).

Section 1334(c) permits a bankruptcy judge to abstain from hearing a matter even if the court

has jurisdiction over the controversy.  Subsection (c)(1) is broader than subsection (c)(2) in that

subsection (c)(1) applies to *core* matters as well as *related to* matters and is commonly referred to

as permissive or discretionary abstention.[17]  Subsection (c)(2) applies to proceedings based on state

law claims *related to*[18] a case under title 11 and is commonly referred to as mandatory abstention.

After addressing the possible implication of *Stern*, the *Moore* court addressed abstention

under § 1334:

> § 1334(c)(2) explains the conditions under which a district court must abstain from
> hearing a bankruptcy case:
>
>> Upon timely motion of a party in a proceeding based upon a State law
>> claim or State law cause of action, related to a case under title 11 but
>> not arising under title 11 or arising in a case under title 11, with
>> respect to which an action could not have been commenced in a court
>> of the United States absent jurisdiction under this section, the district
>> court shall abstain from hearing such proceeding if an action is
>> commenced, and can be timely adjudicated, in a State forum of
>> appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). We have interpreted § 1334(c)(2) to mandate federal court

---

[17]*See* 1 *Collier on Bankruptcy* ¶ 3.05[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

[18]The terms *core* and *related to* that are used to describe the jurisdiction of a bankruptcy court
are derived from the U. S. Supreme Court opinion of *Northern Pipeline Constr. Co. v. Marathon
Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).  *Core* "describe(s) matters or
proceedings that are an integral part of the bankruptcy case."  *Southmark Corp. v. Coopers &
Lybrand (In re Southmark Corp.),* 163 F.3d 925, 930 (5th Cir. 1999), *cert. denied,* 527 U.S. 1004,
119 S.Ct. 2339, 144 L.Ed.2d 236 (1999).  Bankruptcy courts may also hear matters that are *related
to* bankruptcy but are not core matters:  "if a claim is based on state law and the claim could arise
outside of the context of a bankruptcy proceeding, then it is not a core proceeding."  *Sago v. Wal-
Mart Stores, Inc.,* 280 F. Supp. 2d 578, 587 (S.D. Miss. 2003).

> abstention where "(1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding ...; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court." *In re TXNB Internal Case,* 483 F.3d at 300 (citation omitted).[19]
>
>> . . . .
>
>> Second, because the proceeding at issue is "core" under 28 U.S.C. § 157(b)(2) and not merely "related to" a title 11 case, it is not eligible for mandatory abstention under § 1334(c)(2).

*In re Moore,* 739 F.3d  at 728-29 (footnote omitted).

Applying the *Moore* factors to the case at bar, the Court finds that mandatory abstention is not required because the proceeding before the Court is *core* under § 157(b)(2).  Subsection (2)(K) of § 157(b) states that "core proceedings include, . . . (K) determinations of the validity, extent, or priority of liens."[20]   In the Complaint and the Amended Complaint, the Trustee is seeking to determine the validity of BOA's lien pursuant to 11 U.S.C. §§ 544, 545 or 547 of the Bankruptcy Code.

While BOA's State Court Complaint to reform the 2003 Deed of Trust does not cite the Mississippi Code, the Court is aware that BOA's claim would have no independent basis for federal jurisdiction.  However, reformation of the 2003 Deed of Trust is not what is before this Court.  Rather, the matter before the Court is whether the Trustee is may exercise the powers vested in him under the Bankruptcy Code to avoid the purported lien of BOA on the Property that is part of the

---

[19]Under the second *TXNB Internal Case* prong, we defined "non-core" proceedings eligible for mandatory abstention as those "related or in a case under title 11." *In re TXNB Internal Case,* 483 F.3d at 300. This is not entirely correct. The statute provides that proceedings eligible for mandatory abstention must be "related to" a title 11 case, but *not* "arising in" such a case. 28 U.S.C. § 1334(c)(2). In *Stern,* too, the Supreme Court determined that the universe of "non-core" proceedings is co-extensive with that of "related to" proceedings; "core" proceedings are those "arising under" and "arising in" title 11 cases. *Stern,* 131 S.Ct. at 2604–2605.

[20]28 U.S.C. § 157(b)(2)(K).

Debtors' estate.  Consequently, mandatory abstention is not warranted as the cause of action before the Court is one arising under or arising in title 11.

The Court next turns to discretionary or permissive abstention pursuant to § 1334(c)(1).  As noted above, discretionary abstention is broader in that it applies to a wider range of civil proceedings.  A court may opt to exercise discretionary or permissive abstention where abstention is in the best interest of justice, for comity with state courts, or for the respect of state laws.  28 U.S.C. § 1334(c)(1).

In the Southern District of Mississippi, courts consider a non-exclusive list of fourteen factors in determining whether to exercise discretionary abstention:

> (1)  the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention;
>
> (2)  extent to which state law issues predominate over bankruptcy issues;
>
> (3)  difficulty or unsettled nature of the applicable law;
>
> (4)  presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
>
> (5)  jurisdictional basis, if any, other than § 1334;
>
> (6)  degree of relatedness or remoteness of proceeding to main bankruptcy case;
>
> (7)  the substance rather than the form of an asserted core proceeding;
>
> (8)  the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
>
> (9)  the burden of the bankruptcy court's docket;
>
> (10)  the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)   the existence of a right to a jury trial;

(12)   the presence in the proceeding of nondebtor parties;

(13)   comity; and

(14)   the possibility of prejudice to other parties in the action.

*Searcy v. Knostman,* 155 B.R. 699, 710 (S.D. Miss. 1993) (citations omitted); *Sago v. Walmart Stores, Inc.,* 280 F. Supp. 2d 578, 588-9 (S.D. Miss. 2003); *Cockrell v. Cox,* 2008 WL 654272, No. 3:07CV137 (S.D. Miss. Feb. 19, 2008); *S. Healthcare Servs, Inc. v. Lloyd's of London (In re Medforce Management, LLC)*, Case No. 0500150EE, Adversary No. 0600167EE, (Bankr. S.D. Miss. April 16, 2007).

After reviewing the *Searcy* factors above and without discussing each one individually, the Court finds that the majority of the factors support the Court's decision to decline to exercise discretionary or permissive abstention.  While BOA asserts that this is a matter of state law, the powers of a trustee under 11 U.S.C. § 544, better known as the strong arm clause, are conferred upon the trustee by federal law.  BOA is asking this Court to exercise discretionary abstention and allow it to return to state court and seek to have the 2003 Deed of Trust reformed to include the correct legal description.  If the Court abstained and permitted BOA to return to state court, the strong arm provisions of § 544 would be unavailable to the Trustee, to the detriment of the bankruptcy estate and its creditors.  Consequently, the Court finds that discretionary or permissive abstention is not warranted.

The Court acknowledges that while the strong arm powers are conferred by federal law, the extent of the Trustee's rights, *i.e.* whether he is a bona fide purchaser, is determined by state law. However, that fact alone is not enough to convince the Court that it should exercise discretionary

abstention to allow BOA to seek to reform its 2003 Deed of Trust.

### III.  Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure,[21] as amended effective December 1, 2010,[22] provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When considering a motion for summary judgment, "the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 106 S. Ct. 2505, 2510 (1986)." *Newton v. Bank of America (In re Greene),* 2011 WL 864971, at *4 (Bankr. E.D. Tenn. March 11, 2011).

"The moving party bears the burden of showing the . . . court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)." *Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003).

Once a motion for summary judgment is pled and properly supported, the burden shifts to the non-moving party to prove that there are genuine disputes as to material facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

[21]Federal Rule of Civil Procedure 56 is made applicable to bankruptcy proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056.

[22]The Notes of Advisory Committee to the 2010 amendments state that the standard for granting a motion for summary judgment has not changed, that is, there must be no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law.  Further, "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases."

information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other

materials."[23]  Or the non-moving party may "show[ ] that the materials cited do not establish the

absence . . . of a genuine dispute."[24]  When proving that there are genuine disputes as to material

facts, the non-moving party cannot rely "solely on allegations or denials contained in the pleadings

or 'mere scintilla of evidence in support of the nonmoving party will not be sufficient.'  *Nye v. CSX*

*Transp., Inc.,* 437 F. 3d 556, 563 (6th Cir. 2006); *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp*., 106 S. Ct. 1348, 1356 (1986)."  *Newton,* 2011 WL 864971, at *4.  "[T]he nonmovant

must submit or identify evidence in the record to show the existence of a genuine issue of material

fact as to each element of the cause of action."  *Malacara v. Garber,* 353 F.3d 393, 404 (5th Cir.

2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'"  *Matsushita,* 106 S. Ct. at 1356 (citations

omitted).

　　　　When considering a motion for summary judgment, the court must view the pleadings and

evidentiary material, and the reasonable inferences to be drawn therefrom, in the light most

favorable to the non-moving party, and the motion should be granted only where there is no genuine

issue of material fact.  *Thatcher v. Brennan*, 657 F. Supp. 6, 7 (S.D. Miss. 1986), *aff'd*, 816 F.2d 675

(5th Cir. 1987)(citing *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070-71 (5th Cir. 1984)); *See*

*also Matshushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct.

1348, 1356-57, 89 L. Ed. 2d 538, 553 (1986).  The court must decide whether "the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

---

[23]Fed. R. Bankr. P. 7056(c)(1)(A).

[24]Fed. R. Bankr. P. 7056(c)(1)(B).

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct.

2502, 2512, 91 L. Ed. 2d. 202 (1986).

## A. Application to the Case at Bar

As previously stated, the parties are in agreement that there are no material facts in dispute.

The dispute arises as to how the law applies to these particular facts.  BOA submits that it is entitled

to a judgment as a matter of law that its 2003 Deed of Trust "was perfected as a matter of law as to

bona fide purchasers as of the date of the filing of the bankruptcy case."[25]  Whereas, Trustmark

asserts that as a matter of law, the 2003 Deed of Trust is defective, and therefore, Trustmark is

entitled to a judgment as a matter of law that the Trustmark Deed of Trust "has a priority lien

position over the defective October 2003 Deed of Trust and over any interest of the Trustee."[26]

Since the parties are in agreement that there is no dispute as to any material facts, the Court

will address the two motions for summary judgment collectively.

### 1.  Lis Pendens

### a. Mississippi Code

"*Lis pendens* simply means a pending suit, and the doctrine denotes those principles and

rules of law which define and limit the operation of the common law maxim: *Pendente lite nihil*

*innovetur*, or pending the suit nothing should be changed."[27]  Mississippi's Lis Pendens statute

states:

---

[25]*Bank of America, N.A.'s Motion for Summary Judgment*, Adv. Proc. No. 1200061EE, Adv. Dkt. #45, p. 1, June 24, 2013.

[26]*Motion of Trustmark National Bank for Summary Judgment*, Adv. Proc. No. 1200061EE, Adv. Dkt. #49, p. 2, July 15, 2013.

[27]*Mississippi Chancery Practice* § 28:1 (2013 ed.)

§ 11-47-3. Notice of suit affecting real estate recorded.

When any person shall begin a suit in any court, whether by declaration or bill, or by cross-complaint, to enforce a lien upon, right to, or interest in, any real estate, *unless the claim be founded upon an instrument which is recorded*, or upon a judgment duly enrolled, in the county in which the real estate is situated, such person shall file with the clerk of the chancery court of each county where the real estate, or any part thereof, is situated, a notice containing the names of all the parties to the suit, a description of the real estate, and a brief statement of the nature of the lien, right, or interest sought to be enforced.

Miss. Code. § 11-47-3 (emphasis added).

The purpose of the filing of a lis pendens is to give notice of a potential claim on real property. *Hooker v. Greer,* 81 So.3d 1103, 1109 (Miss. 2012). In *Yates v. Council,* 137 Miss. 387, 102 So. 176 (Miss. 1924), the Supreme Court of Mississippi explained that a lis pendens "'affords a simple plan whereby those persons who, at the date of the institution of the suit, are vested with, or legally entitled to, a lien upon, right to, or interest in real estate, may protect themselves from subsequent divestiture of title to their detriment.'" *Yates,* 102 So. at 177 (quoting *Fernwood Lumber Co. v. Meehan-Rounds Lumber Co.,* 85 Miss. 54, 37 So. 502, 504 (1904)).

In the case at bar, the substance of the State Complaint relates to the recorded 2003 Deed of Trust. BOA filed its Lis Pendens in an attempt put the world on notice of its pending State Complaint to reform the 2003 Deed of Trust and to "protect themselves from subsequent divestiture of title to their detriment."[28] However, the Lis Pendens Statute clearly states that it applies "to enforce a lien upon, right to, or interest in, any real estate,"[29] and excludes those claims which are *"founded upon an instrument which is recorded*."[30]

---

[28]*Fernwood Lumber,* 37 So. at 504.

[29]Miss. Code. § 11-47-3.

[30]*Id.* (emphasis added).

BOA filed the Lis Pendens based on its recorded 2003 Deed of Trust, which is excluded from or not authorized by the Lis Pendens Statute. This limitation is consistent with the purpose of the Lis Pendens Statute which "'was enacted for the benefit of those [who unlike BOA are] entitled to such interest, lien, or right by virtue of some secret equity, some undisclosed claim, or founded upon or evidenced by some *unrecorded* instrument.'" *Yates,* 102 So. at 177 (emphasis added). In the case at bar, BOA does not have a secret equity, an undisclosed claim, or an unrecorded instrument. The Lis Pendens Statute then does not encompass the use that BOA urges the Court to apply here.

None of the parties questioned whether the Lis Pendens is authorized by the Lis Pendens Statute in their pleadings. After a diligent search of Mississippi law, the Court could locate only one case which addressed the exclusion of a claim based upon a recorded instrument in the Lis Pendens Statute, *Gordon v. Gordon*, 929 So. 2d 981 (Miss. Ct. App. 2006).

In *Gordon,* a timber company sought a lien on real property covered by a recorded timber deed granted by the defendant who did not have adequate title to the land. The trial judge denied a claim for a lien on the real property because a lis pendens notice had not been filed before the conveyance occurred. On appeal, the Mississippi Court of Appeals found that the trial judge was incorrect in denying a lien on the real property due to the lack of a lis pendens being filed. Because the claim was based upon a recorded timber deed, the court held that "[b]y statute, a *lis pendens* notice is required in real estate suits '*unless* the claim be founded upon an instrument which is recorded,' an exception arising from the fact that the recorded instrument constitutes notice of the interest. Miss. Code Ann. § 11-47-3 (Rev. 2002) (emphasis added). This claim is based on a recorded timber deed. . . ." [31] However, the *Gordon* court did not address the effect of a lis pendens

---

[31]*Gordon v. Gordon*, 929 So. 2d 981, 987 (Miss. Ct. App. 2006).

which is not authorized by the statute.

Since the 2003 Deed of Trust was recorded and was of record, by operation of law, the Lis Pendens was not in keeping with the dictates of the statute. In *Texas Extrusion Corporation*,[32] the Fifth Circuit addressed the effect of a lis pendens filed but not authorized by state law. In *Texas Extrusion,* a creditor filed a lis pendens notice that it was appealing an order confirming a Chapter 11 plan. After examining the Texas lis pendens statute,[33] the Fifth Circuit found that the appeal of an order confirming a Chapter 11 plan would not affect or effect the title to the real property, and therefore, held "that the filing of the lis pendens notice was not authorized by Texas statute and thus of no effect."[34]

Following the lead of the Fifth Circuit in *Texas Extrusion*, the Court finds that the Lis Pendens filed by BOA was not authorized by the Lis Pendens Statute, and thus is of no effect. Since the Lis Pendens was not authorized by the statute, it is ineffective to impute notice of BOA's State Complaint to reform the 2003 Deed of Trust. Therefore, the Lis Pendens was not constructive notice to the Trustee of its claim to a lien on the Property.

### b. § 547 Preference

If BOA's Lis Pendens is considered to be constructive notice of its claim to a lien on the Property, the Trustee alleges that the Lis Pendens is an avoidable preference. In *Cullen Center Bank & Trust v. Hensley (In re Criswell),* 102 F.3d 1411 (5th Cir. 1997), the Fifth Circuit explained the

---

[32]*Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.),* 844 F.2d 1142 (5th Cir. 1988), *cert. denied,* 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988).

[33]Unlike the Mississippi statute, the Texas statute does not contain an exclusion for a recorded instrument. Tex. Prop. Code Ann. § 12.007 (West 2009).

[34]*Texas Extrusion*, 844 F.2d at 1152.

purpose of § 547:

> In general, § 547(b) permits a trustee to avoid various preferential transfers of the debtor's property made prior to the commencement of a bankruptcy case. Congress enacted this preference-avoiding section with two intertwined purposes in mind: (1) discouraging creditors from racing to the courthouse to dismember the debtor during his slide into bankruptcy, and (2) facilitating the prime bankruptcy policy of equality of distribution among creditors of the debtor.

*Cullen,* 102 F.3d at 1414 (footnote omitted).

The elements of a preference are found in § 547(b). Section 547(b) provides as follows:

§ 547. Preferences

(b) [T]he trustee may avoid any transfer of an interest of the debtor in property–

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made–
(A) on or within 90 days before the date of the filing of the petition;
. . . .
(5) that enables such creditor to receive more than such creditor would receive if-
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In order for the filing of the Lis Pendens by BOA to be set aside as a preference pursuant to

§ 547(b), the Trustee must prove each of these five elements by a preponderance of the evidence.

*T.B. Westex Foods, Inc. v. FDIC (In re T.B. Westex Foods, Inc.),* 950 F.2d 1187, 1190 (5th Cir.

1992); *Danning v. Bozek (In re Bullion Reserve of N. Am.),* 836 F.2d 1214, 1217 (9th Cir. 1988),

*cert. denied,* 486 U.S. 1056 (1988); *Metcalf v. Golden (In re Adbox, Inc.),* 488 F.3d 836, 843 (9th

Cir. 2007); *Phoenix Restaurant Group, Inc. v. Fuller, Fuller & Assoc., P.A. (In re Phoenix*

*Restaurant Group, Inc.),* 316 B.R. 671, 675 (Bankr. M.D. Tenn. 2004).

There is no dispute that the Lis Pendens was for the benefit of BOA; was on account of the

2003 Deed of Trust; was filed when the Debtors were insolvent; was filed within 90 days of the date

the petition was filed; and if valid, would entitle BOA to receive more than if the Lis Pendens had

not been filed.   The pertinent question is whether the filing of the Lis Pendens is a *transfer* as

contemplated by § 547.   BOA asserts that the Lis Pendens, although recorded inside the preference

period, was not a preferential transfer because it relates back to the Assignment, which was outside

of the 90 day preference period.

Guidance of what constitutes a *transfer* can be found in the Bankruptcy Code.   Section

101(54) defines *transfer*, but § 547(e)(1) defines when a *transfer* is perfected:

(e)(1) For the purposes of this section--

> (A) a transfer of real property other than fixtures, but including the
> interest of a seller or purchaser under a contract for the sale of real
> property, is perfected when a bona fide purchaser of such property
> from the debtor against whom applicable law permits such transfer
> to be perfected cannot acquire an interest that is superior to the
> interest of the transferee;

11 U.S.C. § 547(e)(1).   "[T]he definition of a transfer under section 547 is unambiguous:  a transfer

is perfected when a subsequent purchaser cannot acquire a superior interest."   *Hurst Concrete*

*Products, Inc. v. Lane (In re Lane),* 980 F.2d 601, 605 (9th Cir. 1992).  *See also Melaragno v.*

*CitiMortgage (In re Sandman),* 2013 WL 3991971 at *3, No. 12-10339TPA (Bankr. W.D. Penn.

Aug. 1, 2013) (filing of a lis pendens constitutes perfection under § 547(e)(1); *In re Whitehead*, 399

B.R. 570, 573 (Bankr. S.D. Fla. 2009) (lis pendens does not create a lien but § 547(e)(1) does not

require a lien to be created for a transfer to occur).

As noted, in Mississippi, the effect of the filing of a lis pendens is to give notice to the world

of a potential claim on real property.  Therefore, "[e]very person who acquires from a party to pending litigation any interest in the property during the pendency of the action, whether *bona fide* or not takes subject to, and is conclusively bound by, the judgment in such litigation."[35]  While the filing of a lis pendens does not prevent the sale of real property, it does however bind the purchaser "to the rights of the parties to the action as it may be finally determined."[36]  "The fact that a lis pendens does not actually create a lien does not require a contrary result, because the concept of a "transfer" under the *Bankruptcy Code* is extremely broad and does not require the creation of a lien. *See,* 11 U.S.C. § 101(54) (definition of "transfer")."  *Sandman,* 2013 WL at *4.[37]

Assuming that outside of the context of a bankruptcy case, the Lis Pendens was authorized under Mississippi law, once BOA filed the Lis Pendens, any subsequent purchaser of the Debtors' property bought the property subject to the attachment of a judgment lien arising from the state court lawsuit.  As noted in *Lane,* "[t]he recording of a lis pendens to secure one's interest in a property is precisely the type of conduct promoted by the drafters of the Code.  It is a recorded notice to subsequent parties that they should not assume that the property is 'free and clear.'" *In re Lane,* 980 F.2d at 605; *see also Dupwe v. Worthen Nat'l Bank (In re Rising Fast Rentals, Inc.),* 162 B.R. 203, 204 (Bankr. E.D. Ark. 1993).

The Court finds that the filing of the Lis Pendens was a *transfer* as contemplated under § 547

---

[35]*Mississippi Chancery Practice* § 28:1 (2013 ed.)

[36]*Id.*

[37]The Tenth Circuit in *Ute Mesa Lot 1, LLC v. First-Citizens Bank & Trust Co. (In re Ute Mesa Lot 1, LLC)*, 736 F.3d  947 (10th Cir. 2013) disagreed with the holding of the Ninth Circuit in *Lane.* The Court declines to follow *Ute Mesa.*

because a bona fide purchaser "cannot acquire an interest that is superior to the interest of"[38] BOA.

Therefore, assuming the Lis Pendens was authorized under Mississippi law, the Trustee may avoid

the Lis Pendens under § 547 as a preferential transfer.

## 2.  2003 Deed of Trust

Since the Lis Pendens either is not legally binding under Mississippi law or is avoided as a

preference under § 547, the Court must determine if the Trustee can avoid the 2003 Deed of Trust

under § 544.  As noted above, § 544 is commonly referred to as the trustee's strong arm statute.

Once a bankruptcy petition is filed, the trustee's strong arm powers come into existence pursuant

to § 544.

### a.  § 544(a)(3) Bona Fide Purchaser

Section 544(a)(3) states:

§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--

. . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544.

"Section 544(a)(3) allows the avoidance of a transfer of real property that is not perfected

---

[38]11 U.S.C. § 547(e)(1).

and enforceable against a bona fide purchaser at the time the bankruptcy is filed."[39]  "However, the

extent of the trustee's rights as a . . . bona fide purchaser of real property is measured by the

substantive nonbankruptcy law of the jurisdiction governing the property in question."[40]

Turning to the law in Mississippi, Mississippi is considered a *race notice* state, which means

that "the person who records first, without knowledge of prior unrecorded instruments, has priority

over those other instruments.  The instrument shall, however, be binding between the parties to the

instrument and their heirs, and to all subsequent purchasers with knowledge of the other instrument,

or without valuable consideration."[41]

Section 89-5-5 of the Mississippi Code provides for the priority of deeds of trust to those

parties without notice of prior instruments.  Section 89-5-5 provides:

> Every conveyance, covenant, agreement, bond, mortgage, and deed of trust shall take
> effect, as to all creditors and subsequent purchasers for a valuable consideration
> without notice, only from the time when delivered to the clerk to be recorded; and
> no conveyance, covenant, agreement, bond, mortgage, or deed of trust which is
> unrecorded or has not been filed for record, shall take precedence over any similar
> instrument affecting the same property which may be of record, to the end that with
> reference to all instruments which may be filed for record under this section, the
> priority thereof shall be governed by the priority in time of the filing of the several
> instruments, in the absence of actual notice.

Miss. Code. § 89-5-5.

The Supreme Court of Mississippi has defined a good faith purchaser as "'one who has in

good faith paid a valuable consideration without notice of the adverse rights in another.' *Giesbrecht*

*v. Smith,* 397 So.2d 73, 77 (Miss. 1981)."  *Harrell v. Lamar Co., LLC,* 925 So.2d 870, 876 (Miss.

---

[39]*Realty Portfolio, Inc. v. Hamilton (In re Hamilton),* 125 F.3d 292, 298 (5th Cir. 1997) (citations omitted).

[40]Alan N. Resnick & Henry J. Sommer, 5 *Collier on Bankruptcy* ¶ 544.02[1] (16th ed. 2013).

[41]7 *Mississippi Practices Series, Encyclopedia of Mississippi Law,* § 62:49.

2005).  Therefore, the Court must look to determine whether the Trustee can be charged with any type of *notice* of the 2003 Deed of Trust.

In *Metropolitan National Bank v. United States,*[42] the Fifth Circuit addressed the issue of notice under Mississippi law.   In *Metropolitan Bank*, a deed of trust with a defective acknowledgment executed in favor of the bank and was filed in the land records of Harrison County, Mississippi, in 1978.  Subsequently, in 1987, the Internal Revenue Service (IRS) filed federal tax liens on the same property.  In 1988, a deed of trust was filed to correct the error of the defective acknowledgment in the 1978 deed of trust.  The bank foreclosed on its deeds of trust and then filed suit against the United States to quiet title to the property.  The bank alleged that it held equitable title to the property by virtue of the 1978 defective deed of trust of which the United States had actual notice.  The Fifth Circuit disagreed and discussed the difference between *actual notice, constructive notice* and *inquiry notice*:

> Under Mississippi law, a prior deed, whether recorded or unrecorded, is good against a subsequent purchaser or creditor with actual notice of it. *Dixon & Sharkey v. Lacoste,* 9 Miss. 70, 107 (1843). In addition, a recorded deed that is not acknowledged is valid against "one who sees upon the record and reads an instrument improperly recorded, because not acknowledged or proved as required by law." *Woods v. Garnett,* 72 Miss. 78, 16 So. 390, 391 (1894). In order to have "actual notice," a party must be "aware of the nature and purposes of the deed." *Bass v. Estill,* 50 Miss. 300, 306 (1874). Actual notice is defined by Black's Law Dictionary (5th ed. 1979) as "such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry."

> The appellees contend, and the district court held, that the United States had actual notice because the deed was recorded and could have been located had the United States searched the records. This argument confuses the concepts of actual notice and constructive notice. The mere recording of a deed does not provide *actual* notice to

---

[42]*Metropolitan National Bank v. United States*, 901 F.2d 1297 (5th Cir. 1990).

strangers to a transaction who are not in possession of facts that would place them
on inquiry notice. Rather, the primary purpose of recording is to impart *constructive*
notice.

The appellees contend, however, that the United States had a "duty to inquire"
because its agents had knowledge of sufficient facts to place it upon inquiry notice
to check the title to the subject property. "Inquiry notice," as recognized in
Mississippi, arises when a party has actual notice or knowledge of facts that would
lead a reasonably prudent person to question the sufficiency of title to property. *E.g.,*
*Burkett v. Peoples Bank of Biloxi,* 225 Miss. 291, 83 So.2d 185, 188 (1955). A party
who has inquiry notice "is charged with notice of all those facts which could or
would be disclosed by a diligent and careful investigation." *Id.* Under Mississippi
law, a party is not on inquiry notice from the mere recordation of a deed evidencing
an interest in property. *C & D Investment Co. v. Gulf Transport Co.,* 526 So.2d 526,
530 (Miss.1988).

. . . .

We conclude that the record does not support the district court's holding that the
United States had actual notice of the defective deed of trust. The record contains no
evidence indicating that the United States was aware of the deed of trust prior to the
time it filed its federal tax liens, or that it possessed any knowledge of circumstances
that would have put it on inquiry which, if pursued, would have led it to actual
knowledge of the defective deed of trust. Although the district court's statement that
the defective deed of trust could give actual notice "to anyone who cared to review
the records of the Chancery Clerk" is correct as far as it goes, there is no evidence
that any agent of the United States reviewed the records of the Harrison County
Chancery Clerk, and, under the facts in the record, the United States did not have
inquiry notice of the existence of the deed.

*Metropolitan Bank,* 901 F.2d at 1303-04.

Applying *Metropolitan Bank* to the case at bar, at the time the Debtors filed their bankruptcy

petition, the 2003 Deed of Trust at best provided constructive notice to the Trustee as opposed to

either actual notice or inquiry notice.  The Trustee had no firsthand knowledge of the 2003 Deed of

Trust and was a stranger to the transaction, moreover, he "was . . . not in possession of facts that

would place [him] on inquiry notice."  *Id.* at 1303.

In sum, the mere recording of a deed of trust is constructive notice to strangers to the

transaction.  Only when a party has *actual notice* or knowledge of facts surrounding the deed of trust is that party charged with *inquiry notice*.  If a party is charged with *inquiry notice*, he "'is charged with notice of all those facts which could or would be disclosed by a diligent and careful investigation.'"  *Id.* (citation omitted).

The distinction between constructive notice and inquiry notice is shown in *Simmons v. Hutchinson,* where instead of the correct description of "the E. ½ of the N.E. ¼ of sec. 3,"[43] John T. Hutchinson executed a deed of trust to J. A. Simmons conveying "the ½ of the N.E. ¼ of sec. 3."[44] Simmons foreclosed on the property, and the trust deed contained the same erroneous description of the land.  Hutchinson then sold "the E. ½ of the N.E. ¼ of section 3 to J. W. Fisher."[45]  Simmons, who purchased the property at the foreclosure sale, sought to have the deed of trust to Fisher set aside.  Simmons alleged that Fisher was not a bona fide purchaser, but rather that Fisher had notice of Simmons' rights in the property.  The court held:

> Constructive notice arising from the record of a muniment of title is imputed to purchasers and creditors from a mere presumption of law, and it imputes only such knowledge as the instrument there recorded discloses, and not what a diligent inquiry into its meaning might disclose. The registration of an instrument is constructive notice to the world of the contents of the paper there recorded or intended to be recorded, and of its particular contents only, and it will have no operation or effect unless the original instrument correctly and sufficiently describes the premises which are to be affected. The effect of the registration law is to impute to a purchaser notice of what the instrument recorded or intended to be recorded actually conveys, and has no operation in the way of putting him upon inquiry as to what premises were intended to be conveyed, unless they be substantially described therein.

*Simmons*, 33 So. at 22.

---

[43]*Simmons v. Hutchinson*, 81 Miss. 351, 33 So. 21, 21 (1902).

[44]*Id.*

[45]*Id.* at 22.

In *Sack v. Gilmer Dry Goods Co.,*[46] one deed of trust omitted the name of the city in the

description, and a subsequently filed second deed of trust omitted the block number in the

description.  The court found that the judgment creditor's lien primed the two deeds of trusts with

the defective descriptions.  The court held:

> We are of the opinion that the description of the lots in both the bank's mortgage and
> the quitclaim deed was void. *Bowers v. Andrews*, 52 Miss. 596; *Dingey v. Paxton*,
> 60 Miss. 1038; *Sims v. Warren*, 67 Miss. 278, 7 So. 226; *Haughton v. Sartor*, 71
> Miss. 357, 15 So. 71; *Nelson v. Abernathy*, 74 Miss. 104, 21 So. 150; *Smith v.
> Brothers*, 86 Miss. 241, 38 So. 353; *Gilchrist v. Thigpen*, 114 Miss. 182, 74 So. 823.

> Constructive notice from the record of a deed or mortgage is imputed to purchasers,
> incumbrancers, and creditors "from a mere presumption of law." The record of the
> instrument imputes only such knowledge as the instrument discloses. The effect of
> registration is to put purchasers, incumbrancers, and creditors on notice of what the
> instrument intended to be recorded actually conveys, and it has no operation in the
> way of putting them upon inquiry as to what was intended to be conveyed unless
> such be described therein. *Simmons v. Hutchinson*, 81 Miss. 351, 33 So. 21. In that
> case the court quotes, with approval, from *Bright v. Buckman* (C. C.) 39 F. 247, as
> follows:

>> "The description of the property upon which the mortgage is an
>> incumbrance must be such as reasonably to enable subsequent
>> purchasers to identify the land; otherwise the record of the mortgage
>> is not notice of any incumbrance upon it. If the description in the
>> mortgage is erroneous, and it is apparent what the error is, the record
>> is constructive notice of the mortgage upon the lots intended to be
>> described; but, if it is not apparent what the error is, then the record
>> is not constructive notice."

> We think, under the authority of the *Simmons* Case, the record of the bank's
> mortgage and the quitclaim deed was not sufficient to impute constructive notice to
> appellee of their intended contents. We are of the opinion that the authorities relied
> upon by appellant as sustaining the contrary view do not so hold.

*Sack*, 115 So. at 340.

In *Pan-American Life Ins. Co.,* the description in the deed of trust described property that

---

[46]*Sack v. Gilmer Dry Goods Co.*, 149 Miss. 296, 115 So. 339 (1928).

was six miles from the property intended to be conveyed.  The court held:

> No knowledge is charged by the bill against the purchaser except the constructive notice furnished by the records; and it is well settled in this state that the constructive notice given by a recorded instrument is only of what is actually described in that instrument or which is to be perceived from that instrument and that instrument alone was intended to be described therein. It does not give notice of other deeds or instruments not referred to therein so as to be made a part thereof, nor does it give notice of a description which a diligent inquiry might have disclosed. *Simmons v. Hutchinson*, 81 Miss. 351, 33 So. 21; *Sack v. Gilmer Dry Goods Co.*, 149 Miss. 296, 115 So. 339. In the latter case there were two deeds which, if taken together, would have disclosed the property intended, but the court held that so far as constructive notice is concerned each deed stood alone; and that is the case here before us.

*Pan-Am. Life Ins. Co. v. Crymes*, 169 Miss. 701, 153 So. 803, 806 (1934); *see also Y.D. Lumber Co. v. Refuge Cotton Oil Co.,* 153 Miss. 302, 120 So. 447 (Miss. 1929) (deed of trust which failed to describe seed house was not effective against subsequent lien creditors); *Miss. Industries for the Blind v. Jackson,* 231 Miss. 135, 95 So.2d 109, 113 (Miss. 1957) (judgment creditors were not put on notice by description that described "an entirely different tract of land [than what] was intended to be included therein."); *Saxon v. Saxon,*242 Miss. 491, 136 So.2d 210 (Miss. 1962) (deed of trust which left out section 13 was not notice to subsequent purchasers).

Applying this line of cases to the facts of the case at bar, the Court finds that the 2003 Deed of Trust which has a legal description for property in the Commonwealth of Pennsylvania is constructive notice to the Trustee but "only what is actually described in that instrument." *Pan-American,* 153 So. at 806.  The contents of the Legal Description of the 2003 Deed of Trust are what is "constructive notice to the world."[47]  Consequently, the only "notice to the world" in the 2003 Deed of Trust is that BOA has a lien on property in Pennsylvania.  Since the Legal Description in the 2003 Deed of Trust was defective and did not substantially describe the Property, it was not sufficient to place the Trustee on "inquiry as to what premises were intended to be conveyed."

---

[47]*Simmons,* 33 So. at 22.

*Simmons,* 33 So. at 22.

Compared to the cases cited above, the Court notes that the defective description in the 2003 Deed of Trust of a legal description for property in another state is a much more egregious defect. The defects which were found not to be constructive notice were:

*Simmons:* description omitted the word East[48]

*Sack:* descriptions omitted the name of the city and the block number[49]

*Pan-American*: description was of property 6 miles away from subject property[50]

*Saxon:* description omitted § 13[51]

*Y.D. Lumber:* description omitted the Seed House[52]

*Miss. Industries:* description omitted SW¼[53]

Consequently, the Court finds that the 2003 Deed of Trust is not perfected and enforceable against a bona fide purchaser, and therefore, the Trustee may avoid the 2003 Deed of Trust pursuant to § 544(a)(3).

In its brief, BOA sites several cases in support of its position that no bona fide purchaser could claim a lien superior to BOA's after the date the 2003 Deed of Trust was recorded.   BOA cites *Neil v. Jones,* 497 So.2d 797 (Miss. 1986); *Stockstill v. Gammill,* 943 So.2d 35 (Miss. 2006) and *Credit Lyonnais New York Branch v. Koval,* 745 So.2d 837 (Miss. 1999) to support its contention that the erroneous Legal Description did not invalidate the 2003 Deed of Trust.  The

---

[48]*Id.*

[49]*Sack,* 115 So. at 339.

[50]*Pan-Am. Life,* 152 So. at 806.

[51]*Saxon,* 136 So.2d at 211.

[52]*Y.D. Lumber,* 120 So. at 448.

[53]*Miss. Industries,* 95 So.2d at 110.

Court, however, does not find these cases persuasive because unlike the case at bar, these cases involved disputes between parties in privity.

In *Neil,* a suit was filed to reform legal descriptions in deeds of trust to reflect the intentions of the parties.   In *Stockstill,* the Gammills conveyed approximately 650 acres to the Stockstills. Approximately three years later, each family filed suit against the other related to the initial conveyance of the 650 acres.   *Credit Lyonnais* did not involve real property. Instead, it involved a wire transfer and the principle of a bona fide purchaser as related to the discharge for value rule.

BOA also cites *In re Hamilton, supra* at 26, to support its position.   In *Hamilton,* the debtor's homestead was sold in a foreclosure sale pre-petition.   While the foreclosure sale was held pre-petition, the substitute trustee's deed of trust was not recorded until after the debtor filed bankruptcy. The Chapter 13 debtor sought to avoid the pre-petition foreclosure sale pursuant to § 544.   The Fifth Circuit found that under Texas law, the "properly filed and recorded"[54] deed of trust granted by the debtor, which was on record at the time the petition was filed, would have been constructive notice to a hypothetical purchaser to inquire as to the status of that deed of trust.   In reversing and remanding the case to the bankruptcy court, the Fifth Circuit directed the court to determine whether, "based on the narrow facts of this case,"[55] a reasonable inquiry into the status of the recorded deed of trust "would have disclosed facts sufficient to place a hypothetical purchaser of the [debtor's] property on notice of the foreclosure sale and substitute trustee's deed."[56]

*Hamilton* is distinguishable from the case at bar because the deed of trust that was recorded at the time of the debtor's bankruptcy petition was properly filed and "[u]nder Texas law,

---

[54]*Hamilton,* 125 F.3d  at 301.

[55]*Id.* at 302.

[56]*Id.* at 302-03 (footnote omitted).

constructive notice is given by properly recorded instruments."[57]  The properly filed and recorded

deed of trust would have given constructive knowledge of the holder of the deed of trust and given

notice that there had not been a transfer of ownership.  "A hypothetical reasonable diligent purchaser

would have inquired of [the holders of the deed of trust] as to the status of the deed of trust."[58]  Here,

the 2003 Deed of Trust has a defective legal description, and therefore, was not a properly filed and

recorded deed of trust under Mississippi law.

BOA also submits that the *Parcel ID Number* or the *Tax ID* number is sufficient to put a

bona fide purchaser on constructive notice which would then trigger *inquiry notice* to investigate

further.  However, BOA has not cited any authority in support of this position, and the Court does

not find this position to be persuasive.  The Court will note that even if BOA's position was valid,

the *Parcel ID Number* in the 2003 Deed of Trust and the *Tax ID* number in the attached Legal

Description are two totally different numbers:  the *Parcel ID Number* on page three of the 2003

Deed of Trust is 3-14-01 while the *Tax ID* number on the Legal Description is 03-0-110791.

BOA also alleges that the street address for the Property listed on the third page of the 2003

Deed of Trust is sufficient to give constructive notice.  However, BOA does not cite any authority

from any court addressing Mississippi law to support this position.  Trustmark, however, cites *In re

Tucker*, 1 F. Supp. 18 (S.D. Miss. 1932), in support of its position that a street address is not

sufficient to give constructive notice.

*Tucker* involved the bankruptcy case of a cleaning business.  While the opinion is rather

short on facts, it appears that a creditor had obtained a mortgage to secure notes for the purchase of

cleaning equipment.  Subsequently, the cleaning business filed bankruptcy and the creditor

---

[57]*Id.* at 299.

[58]*Id.* at 301 (footnote omitted).

attempted to reclaim the equipment from the bankruptcy trustee.  The trustee alleged that he could avoid the lien because the description in the mortgage, which included the street address where the equipment was located, was insufficient to distinguish the equipment from other equipment of the same kind.

In finding that the chattel mortgage was avoidable, the district court held that "the only notice given was such as was imparted by the record.  Recordation of a deed or mortgage containing a void description is insufficient to give constructive notice, and does not put one upon inquiry. *Sack v. Gilmer Dry Goods Co.,* 149 Miss. 296, 115 So. 339."[59]  The court further stated that "[t]he street address where the property is situated is not sufficient."[60]

While *Tucker* does not involve a defective description of real property, it is the only authority cited by any of the parties that considers whether a street address may impart constructive notice under Mississippi law.  Given the result reached in *Tucker,* the Court finds that BOA's argument that the street address is sufficient to impart constructive notice is not persuasive.

In response to the Trustmark Summary Judgment, BOA cites *Burkett v. Peoples Bank of Biloxi,*[61] and *Gulf Land and Development Co. v. McRaney.*[62]  The Court finds that both cases are distinguishable from the case at bar for several reasons.

In *Burkett*, the landowner gave two deeds of trust (a year apart) to Peoples Bank.  Both of these deeds of trust (Peoples' Deeds of Trust) omitted "SE¼ of" from a section of the legal description.  The Peoples' Deeds of Trust stated *the NE¼ of the NE¼ of the Sec. 29* instead of *the*

---

[59]*Tucker,* 1 F. Supp. at 19.

[60]*Id.*

[61]*Burkett v. Peoples Bank of Biloxi,* 83 So.2d 185 (Miss. 1955)*, suggestion of error overruled, opinion modified,* 225 Miss. 291, 83 So. 2d 763 (1955).

[62]*Gulf Land and Development Co. v. McRaney,* 197 So.2d 212 (Miss. 1967).

*NE¼ of the NE¼ of the SE¼ of Sec. 29.*  However, further in the description, they stated:  "Being

a portion of the Northeast quarter of the Northeast quarter of the Southeast quarter of Sec. 29, . . .

."[63]

The landowner then gave a third deed of trust to Page (Page Deed of Trust).  The Page Deed

of Trust accurately described the land and stated that it was subject to "those two certain deeds of

trust executed by the grantor herein to the Peoples Bank."[64]  All three deeds of trust were properly

acknowledged and placed of record.  Subsequently, a creditor of the landowner obtained and

enrolled a judgment, and the sheriff sold the land to Amy Burkett "who then had actual notice of

[Peoples'] two deeds of trust."[65]  Burkett claimed that she acquired title to the land free from the lien

of the Peoples Deeds of Trust because of the erroneous legal description.

The supreme court cited *Sack, supra* at 30, and found that:

> The description of the land in the two deeds of trust upon which appellee relies are
> exactly the same. It is apparent that there is an error in the first part of the description
> in each deed of trust in that it places the lot in the NE 1/4 of the NE 1/4 rather than
> in the NE 1/4 of the NE 1/4 of the SE 1/4.  **If the descriptions in the two deeds of
> trust had contained only the first paragraph, such descriptions would have been
> void as against creditors and subsequent purchasers for value without notice.**
> The second paragraph of the description is in these words: 'Being a portion of the
> Northeast quarter of the Northeast Quarter of the Southeast quarter of Sec. 29,
> Township 7 South, Range 8 West, Jackson County, Mississippi.'

*Burkett,* 83 So.2d at 188 (Emphasis added).

In other words, the supreme court found that because the second paragraph spelled out which

quarters the property was located on, the Peoples Deeds of Trust were constructive notice.  On that

premise, the court further stated:

---

[63]*Burkett,* 83 So.2d at 186.

[64]*Id.* at 187.

[65]*Id.*

The whole description must be read together and reconciled so as to make a good description of the land, if the whole description when read together is such as to reasonably enable one to find the land. We reach the conclusion that it is apparent that there is an error in the description, and that it is apparent that the error is in the first paragraph thereof, and that the whole description when read together is such as to reasonably enable creditors or subsequent purchasers to find the land. We hold that the record of a deed of trust is sufficient to charge creditors and subsequent purchasers with constructive notice of its existence, notwithstanding an error in the description, whenever it is apparent what the error is and the description is such as reasonably to enable creditors and subsequent purchasers to find the land. This rule was recognized, if not applied, in *Sack v. Gilmer Dry Goods Company*, *supra*, a case upon which appellant strongly relies in her brief.

*Id.*

BOA cites excerpts from the above quote to support its position that the Trustee is not a bona fide purchaser.  The Court finds BOA's reliance on this language to be misplaced.   The court in *Burkett* found that because a reading of the *entire legal description* would enable creditors and subsequent purchasers to locate the property, Burkett had constructive notice of the Peoples Deeds of Trust and was put on inquiry notice of investigating the title to the property. Unlike *Burkett*, there is nothing in the Legal Description of the 2003 Deed of Trust, which describes property located in the Commonwealth of Pennsylvania, that could even remotely be used to "reasonably [ ] enable creditors and subsequent purchasers to find the land"[66] located in Mississippi.[67]

Indeed, Justice Gillespie in his *Special Opinion*[68] explains the court's opinion in *Burkett* and how it does not conflict with prior holdings of the court:

The writer is of the opinion that an analysis of all the cases referred to reveals consistency in the holdings.  The cases cited by appellant [*Simmons* and *Sack*] apply

---

[66]*Id.*

[67]The court further held that even if the Peoples Deeds of Trust were not constructive notice, the recital in the Page Deed of Trust regarding the "two certain deeds of trust executed by the grantor herein to the Peoples Bank" gave constructive notice.

[68]While not precedent, the *Special Opinion* is helpful in explaining what can seem to be inconsistent holdings by the court.

> when there is such an error in the description that it is not apparent what the error is and the description is such that a subsequent purchaser could not reasonably find the land, and where no recital is therein contained sufficient to put a reasonably prudent man upon inquiry as to the sufficiency of his title. The cases cited by appellee[69] apply when there are recitals in any instrument which the subsequent purchaser is under a duty to examine sufficient to put a reasonably prudent man on inquiry as to the sufficiency of his title.

*Burkett,* 83 So.2d at 190.

The case before the Court involves such an error in the legal description that a judgment creditor or bona fide purchaser could not reasonably find the land. Therefore, the judgment creditor or bona fide purchaser would not be placed on inquiry notice to investigate the title.

BOA's reliance on *Gulf Land* is likewise misplaced. In *Gulf Land*, the acknowledgment was defective and the legal description failed to show the correct owners of land on the East and West side of the subject property. Like *Burkett*, a subsequent deed of trust contained a recital naming previous conveyances involving the property, and the court found that the recital was sufficient to put subsequent purchasers on notice, "and all subsequent purchasers were charged with notice of what would have been disclosed by an examination of the deed referred to in the recital. The most casual examination of the deed referred to would have revealed the section, township and range in which the land was located."[70] Consequently, *Gulf Land* is also distinguishable from the case at bar because there is nothing in the 2003 Deed of Trust which is sufficient to put subsequent bona fide purchasers on notice.

Indeed, the *Gulf Land* court cited *Pan-American Life, Sack,* and *Simmons,*[71] and noted that these "cases involving a mere void description without any recital sufficient to put subsequent

---

[69][*Dead River Hunting & Fishing Club v. Stovall,* 147 Miss. 385, 113 So. 336 (1927), and *Adams v. Hill,* 208 Miss. 341, 44 So.2d 457 (1950).] These cases were not cited by BOA in their briefs.

[70]*Gulf Land*, 197 So.2d at 215.

[71]*Pan-American Life* and *Sack, supra* at 28; *Simmons, supra* at 27.

purchasers on notice are not in point." *Gulf Land,* 197 So. 2d at 217.

Finally, BOA alleges in its pleadings and briefs that the Assignment which was filed in 2011 and which contained the correct legal description was sufficient to give constructive notice to the Trustee.  However, BOA has not cited any authority to support its position that a subsequently filed assignment cures the deficiencies of a defective legal description in a deed of trust and is thereby constructive notice.  Consequently, the Court does not find that the Assignment was sufficient to give constructive notice to the Trustee.

The Court will note that there is a line of cases which hold that under § 544(a),  "a trustee's actual knowledge is irrelevant. . . .While § 544(a) removed consideration of actual notice, the state law of constructive notice remains applicable in the context of § 544(a)(3)."  *McEvoy v. Ron Watkins, Inc.,* 105 B.R. 362, 364-65 (N.D. Tex. 1987).

The Third Circuit's decision in *McCannon v. Marston,* 679 F.2d 13 (3d Cir. 1982) is the leading case for the proposition that a trustee is never charged with actual notice under § 544.[72]  "In *McCannon,* the Court in reversing the Bankruptcy and District Courts, found that § 544(a) permits a trustee to exercise the rights and powers of certain creditors and purchasers without regard to any actual knowledge of a trustee or of any creditor."  *Dunes Hotel Assocs. v. Hyatt Corp. (In re Dunes Hotel Assocs.),* 194 B.R. 967, 981 (Bankr. D.S.C. 1995)(footnote omitted); *see Crestar Bank v. Neal (In re Kitchin Equip. Co. of Va., Inc.),* 960 F.2d 1242, 1245 (4th Cir. 1985) (a trustee is empowered to avoid any transfer of property without regard to any knowledge); *Lennington v. Graham, (In re Graham),* 110 B.R. 408 (S.D. Ind. 1990); *Gerling v. Cirasuolo (In re Cirasuolo),* 48 B.R. 447 (Bankr. N.D.N.Y. 1985); *Lakeside I Corp. v. Citibank (Fla.), N.A. (In re Lakeside I Corp.),* 120 B.R.

---

[72]While the Third Circuit found that a trustee does not have actual notice under § 544, the Third Circuit held in *McCannon* that the trustee could not avoid the lien because the purchaser's possession of the property in question gave the trustee constructive notice under the applicable state law.

213 (Bankr. M.D. Fla. 1990); *In re Don Williams Const. Co., Inc.*, 143 B.R. 865 (Bankr. E.D. Tenn. 1992).

Applying this line of cases to the facts before the Court, the Trustee is not charged with actual notice under § 544(a).  Looking to state law, the defective description in the 2003 Deed of Trust is not "sufficient to impute constructive notice to [the Trustee] of [its] intended contents."[73] Since the  Trustee is not charged with actual or constructive notice, the 2003 Deed of Trust would be avoided under § 544(a).

### b.  § 544(a)(1) Hypothetical Lien Creditor

The parties do not brief the issue of whether the Trustee may avoid the 2003 Deed of Trust pursuant to § 544(a)(1).  However, the Court finds that § 544(a)(1) would also apply to permit the Trustee to avoid the 2003 Deed of Trust.  Section 544(a)(1) provides:

§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

11 U.S.C. § 544(a)(1).

Similar to § 544(a)(3), § 544(a)(1) provides the trustee with strong arms powers which can be used to avoid unperfected pre-petition transfers of the debtor's property.

To do this, section 544(a) grants to the trustee the powers of a hypothetical judgment lien creditor deemed to be perfected on the date of petition. *See* 11 U.S.C. § 544(a)(1). Thus, any lien that would be vulnerable or subordinate to such a

---

[73]*Sack*, 115 So. at 340.

hypothetical judgment lien creditor, such as, by way of example, a lien that is not
perfected as of the petition date, is avoidable under section 544(a)(1).

*In re Clark Contracting Servs., Inc.*, 399 B.R. 789, 795 (Bankr. W.D. Tex. 2008), *rev'd on other
grounds and remanded,* 438 B.R. 913 (W.D. Tex. 2010).

As a hypothetical judgment lien creditor, the Trustee is deemed to be perfected at the time

the Debtors filed their bankruptcy case.  Since the invalid description in the 2003 Deed of Trust

renders it unperfected as to the Property, the 2003 Deed of Trust is subordinate to a hypothetical

judgment lien creditor.  Therefore, the Trustee may avoid the 2003 Deed of Trust pursuant to

§ 544(a)(1).

### 3. Summary

The Lis Pendens BOA filed was not authorized under Mississippi law because BOA's claim

is "founded upon an instrument which is recorded."  Miss. Code § 11-47-3.  Therefore, the Lis

Pendens is not constructive notice to a bona fide purchaser.

If, however, the Lis Pendens was authorized under Mississippi law and is considered to be

constructive notice to bona fide purchasers, it is a transfer which may be avoided as a preference

under § 547.

Under § 544(a)(3), the Trustee may avoid the 2003 Deed of Trust if it is not perfected and

cannot be enforced against a bona fide purchaser at the time the bankruptcy petition was filed.

Under Mississippi case law, the mere recording of a deed of trust is constructive notice to bona fide

purchasers, but it "imputes only such knowledge as the instrument there recorded discloses."

*Simmons,* 33 So. at 22.  Since the Legal Description contained in the 2003 Deed of Trust does not

"correctly and sufficiently [describe the property]" and only "imputes to a purchaser notice of what

the instrument recorded . . . actually conveys." *Id.*  Therefore, the only constructive notice the 2003

Deed of Trust could possibly provide is for property located in the Commonwealth of Pennsylvania.

Consequently, the Trustee is a bona fide purchaser of the Property under § 544(a)(3) and may avoid

the 2003 Deed of Trust.

Further, as a hypothetical judgment lien creditor, the Trustee may avoid the 2003 Deed of Trust pursuant to § 544(a)(1).

In the Complaint, the Debtor alleges that since BOA does not have a perfected security interest in the Property, the 2003 Deed of Trust should be avoided pursuant to § 544.  Likewise, in the Amended Complaint, the Trustee and Trustmark allege that the 2003 Deed of Trust is not perfected and should therefore be avoided pursuant to § 544.

After reviewing the pleadings in the light most favorable to BOA,[74] the Court finds that there are no material issues of genuine fact and that the evidence is "so one-sided"[75] that summary judgment should be granted and that the 2003 Deed of Trust should be avoided pursuant to § 544(a)(1) or (a)(3).[76]

The Court will note that BOA asserts that Trustmark is not entitled to summary judgment because "Trustmark did not file a cross-claim against Bank of America, instead filing an answer to the debtor's complaint, which sought to admit that the Simmonses were entitled to the relief they had requested, i.e. that Bank of America's lien be avoided pursuant to 11 U.S.C. §§ 544 or 545."[77]

However, the Court is not adjudicating that the Trustmark Deed of Trust is valid nor is the Court ruling that Trustmark's lien primes BOA.  Rather, the issue before the Court is whether

---

[74]*Thatcher*, 657 F. Supp. at 7.

[75]*Anderson,* 477 U.S. at 252.

[76]While not an avoidance action, the Fifth Circuit recently addressed a similar fact situation where a deed of trust failed to describe the disputed property.  The Fifth Circuit recognized that "because the deed of trust. . .did not describe the disputed property, Pioneer Austin never conveyed an interest in that land to ARLIC."  *Liberty Bankers Life Ins. Co. v. Grencorp Management, Inc. (In re Pioneer Austin East Development I, Ltd.),*13-10731, 2014 WL 705271, at *2 n.3 (5th Cir. Feb. 25, 2014).

[77]*Bank of America, N.A.'s Response to Trustmark National Bank's Motion for Summary Judgment*,  Adv. Proc. No. 1200061EE, Adv. Dkt. #54, p. 2, August 5, 2013.

BOA's 2003 Deed of Trust may be avoided pursuant to § 544(a) and § 547, and as to these issues, the Court finds that summary judgment should be granted.[78]

## CONCLUSION

Under Mississippi law, when the 2003 Deed of Trust was recorded without a valid legal description, it was not constructive notice to a subsequent bona fide purchaser or a hypothetical judgment lien creditor. Since the Lis Pendens was not authorized under Mississippi law or is a voidable preference under § 547, the Trustee may avoid the 2003 Deed of Trust under the Trustee's § 544(a) strong arm powers.

> No unfairness exists when a court fails to enforce a lien that did not comply with the applicable statutory requirements. Constructive notice is a device designed to protect those who obey the recording acts. One who fails to obey these acts cannot complain that he does not receive the benefits bestowed thereunder; this person assumes the risk that the property will be transferred to a bona fide purchaser, or subsequent lienholder.

*McEvoy*, 105 B.R. at 365.

The parties are in agreement that "a genuine issue of material fact as to each element of the cause of action"[79] does not exist. The Court finds that as a matter of law, BOA's motion for summary judgment should be denied and that Trustmark's motion for summary judgment should be granted. Consequently, the Court finds that the 2003 Deed of Trust should be avoided pursuant to § 544.

A separate judgment consistent with this Opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

---

[78]Assuming that the Trustmark Deed of Trust is valid, the secondary effect of the Court's avoiding BOA's 2003 Deed of Trust would be that Trustmark would step into a first priority position. BOA acknowledged this fact in *Bank of America, N.A.'s Reply in Support of its Motion for Summary Judgment*, Adv. Proc. No. 1200061EE, Adv. Dkt. #54, p. 2, August 5, 2013.

[79]*Malacara,* 353 F.3d at 404.